**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GENE SMITH,

      Petitioner,

v.                                         Case No. 8:13-cv-2584-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Gene Smith, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and memorandum of law (Dkt. 3).  He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida, in 2009.  Respondent's response (Dkt. 7) raises no challenge to the petition's timeliness.  Smith filed a reply (Dkt. 13).  Upon review, the petition must be denied.

**PROCEDURAL HISTORY**

The State charged Smith with driving while license revoked (count one); fleeing or attempting to elude (count two); three counts of aggravated battery on a law enforcement officer (counts three, four, and five); possession of cocaine (count six); possession of drug paraphernalia (count seven); resisting officers with violence (count eight); and injuring a police dog (count nine).  (Dkt. 10, Ex. 4.)

A jury convicted Smith of counts one, two, five, six, and seven.  (Dkt. 10, Ex. 7.)  The

jury convicted him of the lesser-included offense of resisting officers without violence on count eight and found him not guilty of counts three, four, and nine. (*Id.*)  The trial court sentenced Smith to concurrent terms of 30 years in prison as a prison releasee reoffender on count five; 15 years in prison on count two; five years in prison on counts one and six; and time served on counts seven and eight.  (Dkt. 10, Ex. 8, pp. 93-94; Ex. 9.)

The state appellate court *per curiam* affirmed Smith's convictions and sentences. (Dkt. 10, Ex. 13.)  Smith filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Dkt. 10, Ex. 15.)  The state court denied relief on all claims, except ground seven, in which it granted Smith's request to correct an error on the written judgment.  (Dkt. 10, Exs. 16, 18.)  The state appellate court *per curiam* affirmed the court's orders.  (Dkt. 10, Ex. 19.)

## FACTS

Lakeland Police Officers Rusty Longaberger and Eric Harper were in an unmarked police car when they believed they saw Smith smoking crack while driving his car.  (Dkt. 10, Ex. 6, pp. 124, 216.)  Longaberger and Harper positioned themselves behind Smith and called for another officer.  (*Id.*, p. 124.)  Officer Bryan McNabb, driving another unmarked car, was in the area.  Ultimately, the three cars stopped at a red light.  McNabb's car was in front, Smith's car was second in line, and Longaberger and Harper's car was last.  (*Id.*, p. 125.)  Longaberger and Harper advised McNabb that they intended to effectuate a traffic stop at that time.  (*Id.*, p. 189.)  Both police vehicles' lights were activated.  (*Id.*, pp. 125, 136, 190, 198.)  After McNabb exited his car, Smith put his car into reverse and backed into Longaberger and Harper's car.  (*Id.*, pp. 126, 190.)  He then drove forward between McNabb and McNabb's car.  (*Id.*, p. 220-21.)  McNabb moved to the side, but Smith's car

made some contact with him.  (*Id.*, pp. 152, 190-91.)  Smith's car also hit the open door of McNabb's car, bending it backwards.  (*Id.*, pp. 127, 152, 191.)

Smith continued driving; Longaberger and Harper followed.  (*Id.*, pp. 128-29.) McNabb got back into his vehicle and joined the pursuit.  McNabb moved into position directly behind Smith.  (*Id.*, pp. 129, 192.)  As they traveled through residential neighborhoods, Smith drove onto several yards and hit McNabb's car when he re-entered the roadway.  (*Id.*, pp. 130, 143, 192, 205.)  He was described as ramming the driver's side of his car into the passenger's side of McNabb's car.  (*Id.*, p. 193.)

Officer Aaron Peterman, driving a marked patrol car with lights and siren activated, joined the pursuit and followed directly behind Smith.  (*Id.*, pp. 153, 202.)  Peterman activated his car's video camera system at some point after he joined the pursuit.  (*Id.*, pp. 153-54.)[1]  Additionally, Harper radioed information on the pursuit to police dispatch.  (*Id.*,

---

[1] Peterman testified:

Q.  At some point, sir, did you activate your video camera system in your car?

A.  Yes.

Q.  Okay.  Was that able to catch the pursuit?

A.  Yes.

Q.  So initially, you arrived as backup, and then you took over?  Can you explain that?

A.  I actually caught up and engaged, got up with everybody.  It was Anderson as we come up to Memorial Boulevard at a bar called Roy's Place.  And that's when I actually caught up.
    And then I looked up and realized that it wasn't on.  So I went ahead and pushed play - - or record.  I'm sorry.

Q.  Does that recording, sir - - have you viewed it before?
A.  Yes, I have.

Q.  Does that recording accurately show exactly the chase that you engaged in?

A.  At - - at - - at the point that I engaged, yes.

pp. 128-29.)   Shortly before the end of the pursuit, Officer Charles Dallas, driving another marked car, pulled in behind Peterman.  (*Id.*, p. 182.)  Smith pulled into a driveway and came to a stop.  (*Id.*, pp. 131, 182.)  After initially refusing to exit his car in accordance with officers' directions, he was taken into custody.  (*Id.*, pp. 131-32.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas

---

(Dkt. 10, Ex. 6, pp. 153-54.)

corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law." *Cone*, 535 U.S. at 693.   In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).   *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed the rulings on Smith's postconviction motion in a *per curiam* decision without a written opinion.   This decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.   This backward-looking language requires an examination of the state-court decision at the time it was made.   It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82.   Smith bears the burden of overcoming by clear and convincing evidence a state court factual determination.   "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

### EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.

1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.   28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with

error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The

petitioner must show at least a reasonable probability of a different outcome. *Henderson*,

353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally

defaulted claim if review is necessary to correct a fundamental miscarriage of justice.

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A

fundamental miscarriage of justice occurs in an extraordinary case where a constitutional

violation has probably resulted in the conviction of someone who is actually innocent.

*Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception

requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th

Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of

acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for
> analyzing ineffective assistance of counsel claims. According to *Strickland*,
> first, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). Demonstrating deficient

performance "requires showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Stricklana*, 466 U.S. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Ia.*

Smith must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in

every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Ground One

Smith alleges that trial counsel was ineffective for failing to establish that police officers testified falsely at his trial in order to secure a conviction.  He asserts that "counsel had evidence in sup[p]ort of this claim."  (Dkt. 1, p. 5.)  Smith alleges that Peterman's camera was activated at the beginning of the incident but that Peterman testified untruthfully he did not activate the camera until later in the pursuit.  In his memorandum and reply, Smith asserts that police tampered with the video, which, if viewed in its entirety,

would show he never ran into any police car.  Smith also alleges in his memorandum that

the entire audio tape of the pursuit would demonstrate the officers gave false testimony

because there was no mention of Smith running off the road and striking McNabb's vehicle.

The state court rejected this claim when Smith raised it in his postconviction motion:

> 2. **Ground 1 –** Defendant argues, in essence, that his conviction in this case rested on false testimony and that his trial attorney was ineffective for using [sic] available evidence that would establish the falsity.  The State's response is that this portion of the motion is based partly on pure speculation, and is otherwise refuted by the record.  The appropriate portions of the record are attached to the State's response, which is incorporated into this order as **Appendix A**.  The Court agrees with the position taken by the State.

(Dkt. 10, Ex. 18, p. 1.)  The State's response provides:

> The Defendant's first claim of error is that Trial Counsel rendered ineffective assistance within the meaning of *Strickland* where he failed to establish that Lakeland Police Officers Russell Longaberger, Eric Harper, Bryan McNabb, Charles Dallas, and Aaron Peterman presented false testimony, where Trial Counsel had evidence of that false testimony. Defendant further raises a conclusory claim that [the prosecutor] was aware of this testimony, and presented it in violation of *Giglio v. United States*, 405 U.S. 150 (1972).
>
> The Defendant's claims center on his position that his acquittals of aggravated battery as to two of the officers renders their testimony unworthy of belief.  He claims in conclusory fashion that the video record from Ofc. Peterman's car must have been tampered with, but he provides only speculation to that effect.  He claims, without any foundation, that the State is in possession of this mythical video.  Defendant then claims that Ofc. Peterman's testimony regarding when he became the primary officer on the chase conflicts with the audio record, State's Exhibit 5, that is in evidence.
>
> First, as to the contents of the audio recording, the Record speaks for itself.  The audio record Defendant speaks of is in evidence as State's Exhibit 5, and takes up pages 230-235 of the trial transcript.  Even the most casual observer can read this and see that the entire record is in evidence, and nothing was left out.  Defendant claims that the audio would show that he never struck police vehicles; yet, the trial transcript at 233, lines 10-12, shows that officers reported that he "rammed two of [LPD's] unmarked, black cars." Surely Defendant does not claim that the radio transmissions were manufactured as these events unfolded.
>
> Second, as to the video recording, the Defendant's own motion puts paid to those claims.  Defendant admits that the video in Ofc. Peterman's car

was "activated" at 5th Street and Anderson Avenue, but states that Ofc. Peterman testified that the video was activated at 5th and Lincoln.  But the trial transcript shows that Ofc. Peterman testified that he turned on the camera "right before the bar at Roy's Place.  That's on Anderson."  This is not inconsistent with the video, as Defendant claims.  And as to his claim that [the prosecutor] withheld the audio and video from Trial Counsel, there is no evidence to support that.

The Defendant's claim involving the audio is refuted by the Record, and claims refuted by the Record may be denied without hearing.  *See Kimbrough* [*v. State*], 886 So.2d [965,] 981 [(Fla. 2004)].  The Defendant's claim regarding the video is undermined by his own motion at 12 and the testimony of Ofc. Peterman in the trial transcript at 166.  This claim is also refuted by the Record, and therefore should also be denied without hearing. *See Kimbrough*, 886 So.2d at 981.

(Dkt. 10, Ex. 17, pp. 5-8) (emphasis in original) (State's footnote and citations to postconviction motion omitted).

Smith does not demonstrate entitlement to relief.  He has presented no evidence that any of the officers testified falsely, or that there exist any missing portions of the video or audio recordings that would show the officers' testimony to be false.  Smith repeatedly asserts that the video footage from Peterman's vehicle would have started earlier than Peterman claimed because recording will automatically begin whenever a police vehicle's lights or sirens are activated.  However, Smith cites no authority for this assertion, and a review of the trial transcript demonstrates that the officers did not testify video recording automatically commences in this manner.[2]

As the state court noted, the audio recording reflects that Smith rammed two police

---

[2] In his reply, Smith argues that photographic evidence shows the damage to McNabb's car is inconsistent with his testimony.  It does not appear that these photographs were part of the record before the postconviction court.  A federal habeas court is limited to reviewing the record that was before the state court ruling on the merits of the claim.  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015).  Even assuming these exhibits were part of the record, they do not show that Smith is entitled to relief.  The black and white paper copies of photographs that Smith attaches to his reply show damaged vehicles.  But Smith has failed to demonstrate that these photographs' depictions of the damage show McNabb's testimony to be false.

cars. (Dkt. 10, Ex. 6, p. 232.) Furthermore, Harper, who provided information about the pursuit to police dispatch over the radio, testified that the purpose of his communication was to alert dispatch to their speed, direction, and location. (*Id.*, p. 221.) Therefore, that the audio tape presented at trial did not specifically mention Smith driving off the road and hitting McNabb's car upon its return to the road does not establish that any officer gave false testimony about those events. And while Smith makes the generalized claim that "the story that the officers testified to in court does not match what was recorded on the audio tapes," he does not demonstrate a conflict between the audio recording and the trial testimony that shows any officer testified falsely. Accordingly, Smith fails to show what evidence of perjured testimony counsel could have uncovered or presented.[3]

Smith claims that the prosecutor was aware of the allegedly perjured testimony of the law enforcement officers. To the extent Smith may intend to bring the claim alleging a violation of *Giglio v. United States*, 405 U.S. 150 (1972) that he raised in ground one of his postconviction motion, he is not entitled to relief. "To make out a valid *Giglio* claim, a petitioner 'must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material-i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment.'" *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)). Smith cannot meet

---

[3] In his memorandum, Smith claims that counsel was ineffective for failing to prepare an entrapment defense. (Dkt. 3, pp. 15-16.) This claim is unexhausted because Smith did not present it to the state court. (Dkt. 11, Ex. 15.) Smith cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Therefore, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Smith does not establish applicability of either the cause and prejudice or the fundamental miscarriage of justice exception to overcome the default. Accordingly, this claim is barred from federal habeas review.

this standard because he has not demonstrated that the State presented false testimony.

Smith has not established that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground One.[4]

**Ground Two**

Smith asserts that trial counsel was ineffective for failing to depose Officer McNabb and Officer Peterman, which he contends would have resulted in their making statements that could have been used to impeach them at trial. Smith alleges that counsel failed to undertake any investigation, and did not pursue a "coherent theory of defense." (Dkt. 3, pp. 17, 18.) He suggests that counsel should have "used impeachment as a defense" but that counsel "failed to perform the proper research and investigation necessary to assert an impeachment defense." (Dkt. 13, pp. 7, 8.) Smith further states that the officers' "testimony would have been critical and contributed to the acquittal of the aggravated battery or battery charge; especially there [were] numerous inconsistencies throughout their testimony." (*Id.*, p. 8.)

In his postconviction motion, Smith asserted that Peterman's deposition testimony would have contradicted his trial testimony concerning the point at which he began recording video of the incident. (Dkt. 10, Ex. 15, pp. 23-24.) He also appeared to argue that McNabb's deposition testimony, along with video footage, would have demonstrated

---

[4] To the extent Smith may intend to raise a distinct claim that the trial court erred in denying his motion for judgment of acquittal on the count of aggravated battery on McNabb (*see* Dkt. 3, p. 13), his argument is not cognizable on federal habeas review because he does not raise any federal claim. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is not available to correct errors of state law); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (issues of state law do not provide a basis for federal habeas relief).

that McNabb was not required to jump out of the way of Smith's car and that Smith never

hit McNabb's vehicle.  (*Id.*, p. 24).  Smith further asserted that the officers' testimony was

inconsistent with the audio recording of the incident.  (*Id.*, p. 25).

The state court denied Smith's claim of ineffective assistance of counsel:

3.  **Ground 2 –** Defendant contends that counsel was ineffective for not taking depositions.  Again the Court is in agreement with the State's response and adopts the arguments made therein.  It is pure speculation to say that the two officers named in the motion would have given information in a deposition that would have been contrary to their testimony at trial, such that they could have been successfully impeached with their deposition testimony.

(Dkt. 10, Ex. 18, p. 1.)  The State's response provides:

In Defendant's second claim of error, he takes the position that Trial Counsel provided ineffective assistance by failing to depose Officers McNabb and Peterman.  Defendant makes conclusory allegations as to what he believes the officers would have testified to in depositions, and speculates that they would have testified in a way that would have made them easily impeachable.  This is facially insufficient to require evidentiary testing.

When claiming ineffectiveness for a failure to depose, a defendant must set forth <u>specific</u> harm resulting from that.  *See Hannon v. State*, 941 So.2d 1109, 1119 (Fla. 2006).  The undersigned assumes *arguendo* that Trial Counsel did not depose Officers Peterman and McNabb.  *See Kimbrough*, 886 So.2d at 981-82.  But even if true, the Defendant still must make claims of harm <u>specifically</u> supported by <u>evidence</u>, rather than relying on conclusory allegations.  *See Hannon*, 941 So.2d at 1119; *see also Lecroy*, 727 So.2d at 241; *Thomas*, 206 So.2d at 476; *Dancy*, 175 So.2d at 209.

In *Magill v. State*, 457 So.2d 1367, 1370 (Fla. 1984), which the *Hannon* court relied on, a defendant claimed that his trial counsel rendered ineffective assistance by not deposing certain witnesses.  The high court held that when making such a claim, a defendant had to identify a "specific evidentiary matter to which the failure to depose witnesses would relate." *Magill*, 457 So.2d at 1370.  To do so, the movant had to show "admissible evidence that would be forthcoming from the witnesses . . . or brought out in cross-examination."  *Id.*  Without that, such a claim lacks facial sufficiency. *See id.*

Here, Defendant's *Motion* at 18-25 is a word-for-word copy of pages from his earlier motion.  At the end of 25, Defendant's *Motion* finally begins to set out the expected testimony.  At 26, it is apparent that the testimony each officer actually gave at trial is identical to that the Defendant sets forth,

and Defendant himself relies on this to claim that had depositions taken place, Trial Counsel could have used this to impeach the officers.  However, as seen *supra*, the trial transcript at 230-35 shows the radio transmissions confirming that Defendant rammed the police cars, which Defendant claims would have been impeached.   His claim regarding the video has been similarly refuted *supra*. Defendant has not shown admissible <u>evidence</u> that would cause the outcome of these proceedings to be different.

(Dkt. 10, Ex. 17, pp. 8-10) (emphasis in original) (State's citations to postconviction motion and record omitted).

Smith's assertion that Peterman and McNabb would have provided testimony different from that presented at trial is speculative and conclusory.  And while Smith asserts that the audio recording was inconsistent with their trial testimony, he cites no specific inconsistencies.  Smith provides no basis to conclude that deposing Peterman and McNabb would have produced information with which to impeach them at trial.  Accordingly, Smith has not established that counsel's performance was deficient, or that he suffered resulting prejudice.   *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  He does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts when it denied his claim.  Smith is not entitled to relief on Ground Two.

**Ground Four**

Smith contends that trial counsel was ineffective for not arguing that the jury failed to "make a specific finding with respect to agency insignia or other jurisdictional markings" on the charge of fleeing or attempting to elude.  Section 316.1935, Fla. Stat., provides:

(3) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with

siren and lights activated, and during the course of the fleeing or attempted eluding:

(a) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 316.1935(3)(a), Fla. Stat. The verdict form reflects that the jury made the following findings:

We, the jury, find the Defendant, as to Count 2 . . .

Guilty of Fleeing or Attempting to Elude, and we further find that . . .

The law enforcement officer was in an authorized law enforcement patrol vehicle with the lights and siren activated; and during the course of the fleeing or attempting to elude, the Defendant, drove at a high rate of speed or in a manner demonstrating a wanton disregard for the safety of persons or property.

(Dkt. 10, Ex. 7.)[5]

The state court denied Smith's ineffective assistance of counsel claim:

6. **Ground 4 –** Defendant argues that counsel was ineffective with regard to the jury's verdict as to the charge of fleeing to elude. To understand this argument one must first review the structure of the Florida statute that creates the offense of fleeing to elude. Fla. Stat. § 316.1935 provides an escalating series of penalties based on the presence or absence of certain aggravating factors. The "core crime," as it were, is found in subsection (1), which states that it is unlawful for the operator of a vehicle to willfully refuse or fail to stop that vehicle, if the operator knows that an officer has given a command to do so. The offense proscribed under subsection (2), also a third-degree felony but of higher level for sentencing guidelines purposes, requires proof that the officer is in "an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed" and "with siren and lights activated." Subsection (3) under which

---

[5] The record reflects that the parties addressed the verdict form's absence of language concerning agency insignia or jurisdictional markings, but that counsel made no objection to the verdict form as presented to the jury. (Dkt. 10, Ex. 6, pp. 296-97, 300-03, 326-29.)

this Defendant was charged, and which creates a second-degree felony, essentially recapitulates subsection (2) but adds the element of high-speed chase and/or wanton driving behavior.  The verdict form in the case at bar finds Defendant guilty of fleeing to elude, plus the aggravating circumstance of high-speed chase.  However, while it includes the language about "lights and siren activated," it does *not* have the "agency insignia" language.  Thus, reasons Defendant, he was not properly convicted of a second degree felony and counsel should have made this argument at the time of sentencing.

7.  The information in this case sets forth all the required elements for this charge. . . . Defense counsel essentially admitted the traffic-related offenses, but advised the jury Defendant was denying the violent crimes.  Specifically, he admitted that Defendant fled the scene, because he was driving on a suspended license and was in possession of drugs.  Eventually he realized this was fruitless he pulled over and surrendered.  This strategy was undertaken with Defendant's express permission.  Defendant did not testify at his trial.

. . .

8. The next trial witness was Officer Peterman.  On the date of this incident Peterman was driving a *fully marked* police car.  He happened by as the two black cars made the initial traffic stop.  Once the Defendant took off Peterman fell in behind the other officers and activated his own lights and siren.  He was able to capture at least part of the subsequent chase on camera.  This portion of the chase also featured an Officer Dallas, who indicated he was also in a marked car and that he activated lights and siren.

9. In his closing argument defense counsel again conceded guilt on the traffic offenses, focusing instead on the charges that involved violence toward the various officers.  The State's rebuttal argument suggests that defense counsel may have raised an issue of Defendant not knowing the black cars contained police officers, or that reckless driving occurred, but correctly noted that other marked cars were involved in the chase as well.  Following closing argument there was considerable discussion over how the verdict form should read.  This appears to have concerned the appropriate lesser offenses.  A stipulation was reached after defense counsel conferred with his client.  The jury instruction for the principal charge, like the information, tracked the statutory language.

10. Thus the question arises whether the jury even had to make the explicit "lights and sirens" finding since it was merely an element, and one which was defined for them, of the primary offense.  In the Court's view the argument confuses the concept of multiple elements of a crime with the definition of those elements.  For example, a robbery consists of taking

property from victim x by use of force or threat.  Yet a verdict form in a robbery case need only ask the jury whether a robbery occurred (or such lesser included offenses as the evidence might justify), and not whether a taking of property occurred, whether that taking was from the alleged victim, or whether force or threat occurred.  By instructing the jury on the elements of robbery, the Court has advised that jury of what robbery means - and that they should not return a verdict of guilty unless all those elements were proven.  Applied to the present case, the jury was instructed on the elements that would have to be proven before they could find Defendant guilty of aggravated fleeing to elude. The presumption is the jury understood these were the elements.  Accordingly, the verdict form was not required to ask for separate findings as to all the elements, no more than the jury would have to find that offense occurred on the specified date or in Polk County even though there are instructions for such matters in those rare cases where they are actually trial issues.  For all these reasons the Court finds that Defendant cannot show prejudice from the nature of the verdict form, nor is it reasonable to expect he could do so if allowed a chance to amend his petition.

(Dkt. 10, Ex. 18, pp. 2-4) (court's record citations omitted).

To the extent this claim rests upon a state law issue concerning the sufficiency of the verdict form and the jury's findings under Florida law, deference must be afforded to the state court's determination.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's

construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Additionally, the jury was instructed that to prove fleeing or attempting to elude, the State must establish four elements beyond a reasonable doubt.  The third element was that the law enforcement officer "was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle and with siren and lights activated." (Dkt. 10, Ex. 6, p. 310.)  Jurors are presumed to follow their instructions.  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).   Furthermore, the record reflects that for a portion of the pursuit, Officer Peterman was driving the lead car.  (*Id.*, pp. 201-02, 232, 238.)  Peterman testified that he was driving a "fully marked" car.  (*Id.*, p. 151.)  He described his car as a "standard City of Lakeland-issued police car with the light bar.  It's the white car with the blue and orange markings on it that say police department." (*Id.*)   Under these circumstances, Smith does not show that counsel was ineffective for failing to object to the verdict form or that he suffered resulting prejudice.  He fails to demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Consequently, Smith is not entitled to relief on Ground Four.

**Ground Three**

Smith argues that trial counsel was ineffective for failing to object when, during trial, the State amended the charging document by adding a new charge.  The state filed a charging document, followed by three amended charging documents.  The original charging document, as well as the first and second amended charging documents, alleged that Smith committed aggravated assault on Officer McNabb.  (Dkt. 10, Exs. 1, 2, 3.)  The third

amended charging document amended count five to reflect a charge of aggravated battery on McNabb.  (Dkt. 10, Ex. 4.) The prosecutor signed it on August 12, 2009, after jury selection occurred on August 10, 2009.  (Dkt. 10, Exs. 4, 5.)

Smith was found guilty of aggravated battery on McNabb but acquitted of aggravated battery on Longaberger and Harper.  Smith claims that counsel did not have enough time to prepare a defense for aggravated battery on McNabb.  He argues he also would have been acquitted of aggravated battery on McNabb if counsel had adequate time for preparation.  The state court summarily denied his claim:

> 4.  **Ground 3 –** Defendant argues that counsel was ineffective for not objecting when the State amended the information during his trial to add a new offense. As acknowledged in both the motion and the State's response, the State filed several informations in this case, only the last two of which are important to the issue raised on Ground 3.   The Second Amended Information, which charged a total of nine counts, was filed in May, 2009, several months before the commencement of trial.  The Third Amended Information was filed after the trial had begun.  It too included nine separate counts.   The sole change was to upgrade the charge in Count 5 from aggravated assault on a law enforcement officer to aggravated battery on a police officer.

> 5.  Jury selection in this case began August 10, 2009.  Near the very beginning of same the trial judge read the information to the jury.  Notably, the jury initially was told that Defendant was charged with three counts of aggravated battery, though the judge then read Count 5 as it actually existed at the time, *i.e.*, the aggravated assault charge.  However, during his preliminary instructions to the sworn jury the trial judge tracked the language of the Third Amended Information.  Indeed there appears to have been no objection from trial counsel. However, this fact does not *ipso facto* demand a finding that counsel's failure to object (or, perhaps, tacit agreement) evinces ineffectiveness.  The State's response, particularly at pp. 11-13, correctly states the law on this issue.  The State does suggest that the Court might permit Defendant one opportunity to amend this portion of his motion pursuant to *Spera v. State*, 971 So.2d 754 (Fla. 2007)  However, the Court's analysis of **Ground 4**, in response to which the State makes the same recommendation, has persuaded it that amendment would serve no useful purpose because it concludes the record establishes that the error, if any, was harmless.  The basis for this finding will be detailed below under the

discussion of **Ground 4**.

(Dkt. 10, Ex. 18, p. 2) (court's record citations omitted).

The court then presented its analysis of ground four, in which it addressed counsel's

decision to concede guilt on the traffic offenses and argue that Smith only intended to flee,

not to commit aggravated battery.  The state court continued its analysis of ground three:

> 11.   Returning to **Ground 3** and the Court's decision not to permit amendment, the above discussion should make it clear that defense counsel's primary focus in this case was on keeping his client from being convicted of the violent felonies, essentially conceding the traffic-related offenses.  In most instances a court contemplating the summary denial of a 3.850 motion should not normally *assume* that such decisions were tactical. However, nowhere in his motion does Defendant actually criticize the strategy that his attorney employed and that Defendant confirmed before the trial judge.  Even before the final amendment to the Information it was known that Defendant was being charged with aggravated battery on two officers. The final amendment did not add an extra victim, only changed the charge as to that third victim.   While this amendment did have the effective of increasing the possible maximum penalty, it is impossible to conclude that it had any impact on trial counsel's theory of defense or ability to prepare that defense.  Either Defendant knowingly and willfully attempted violence toward those officers (the State's theory) or he did not (the defense theory).  Clearly the trial would not have been the slightest bit different had the final amendment not been effected.

(Dkt. 10, Ex. 18, p. 4.)   The state court cited the State's discussion of the law on

amendments to charging documents:

> As to his claim regarding the late amendment, it is "well settled that 'the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant.'" *Henderson v. State*, 810 So.2d 999, 1001 (Fla. 4th DCA 2002) (*quoting State v. Anderson*, 537 So.2d 1373, 1379 (Fla. 1999)).  In *Henderson*, that defendant was charged with attempted burglary, possession of burglary tools, and escape.  *See* 810 So.2d at 1000. The Friday prior to jury selection, the State amended the information, contending that the facts showed a completed burglary rather than an attempt.  *See id.*  The 4th District Court of Appeal distinguished its earlier cases of *Hahn v. State*, 626 So.2d 1056 (Fla. 4th DCA 1993) and *Washington v. State*, 378 So.2d 852 (Fla. 4th DCA 1979), and held that the

amendment was not prejudicial to the Henderson's substantive rights. *See* 810 So.2d at 1002.

The difference between *Henderson* and the earlier cases was that in *Henderson*, the question was merely an application of law to unchanged facts. In *Hahn* and *Washington*, the state had actually filed new charges that changed the intent level of the crime. *See* 810 So.2d at 1002. In the instant case, [the prosecutor's] amendment to Count 5 did not change the intent level of the crime. Both assault and battery are specific intent crimes. *See Frey v. State*, 708 So.2d 918, 922 (Fla. 1998). As in *Henderson*, the amendment did not cause a drastic change in the state of mind required to prove the case.

As to Defendant's claim that the lack of adding the statutory citation to the amended information for battery resulted in prejudice, that claim likewise fails. It is equally well settled that defendants are **not** entitled to collateral relief:

> (1) where a statutory citation for the crime is given, but all elements are not properly charged, or (2) where the wrong or no statutory citation is given, but all elements of the crime are properly charged.

*Moseley v. State*, 7 So.3d 550, 552 (Fla. 5th DCA 2009) (*quoting State v. Burnette*, 881 So.2d 693, 695 (Fla. 1st DCA 2004)). Here, the third amended information in Count 5 sets out the required statutory elements for battery, *see* § 784.03 Fla. Stat. (2008), and therefore Defendant can show no prejudice as to lack of the statutory citation.

(Dkt. 10, Ex. 17, pp. 11-13.)

Smith fails to show that counsel was ineffective for failing to object to the third amended charging document, or that he was prejudiced as a result. Counsel conceded the charges of driving while license revoked and fleeing or attempting to elude. (Dkt. 10, Ex. 6, pp. 118-19, 274.)[6] As addressed, counsel then argued to the jury that the more severe offenses of battery on the law enforcement officers had not been proven because Smith merely intended to flee from the law enforcement officers, not to do harm to them. (*Id.*, pp. 119-20, 277-79, 281, 288-91.) This argument encompassed the aggravated battery

---

[6] Smith agreed with the concession. (Dkt. 10, Ex. 6, pp. 171, 336-37.)

charges concerning all three officers.   Furthermore, it appears that counsel knew the charging document might be amended to reflect aggravated battery on McNabb.[7]  Smith does not identify another defense or argument that counsel could have developed with respect to the charge of aggravated battery on McNabb if he had more time to do so.

Accordingly, Smith fails to show that the state court's decision was an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Three.


**Ground Five**

Smith alleges a federal due process violation in that the state court entered an amended judgment on October 21, 2009.  Smith claims that "once the judgment and sentence were rendered on September 25, 2009, jeopardy attached.  The court was without lawful authority to amend the judgment to include another statute, F.S. § 784.07.  Without the amended judgment adding the proper language to count five, F.S. § 784.07, the degree of felony is a lesser degree and Petitioner must be resentenced."  (Dkt. 1, p. 20.)

The original judgment provides that on count five, Smith was convicted under § 784.021, Fla Stat., which governs aggravated assault.  (Dkt. 10, Ex. 9.)  The amended

---

[7] At the sentencing hearing, the State indicated that count five was amended to charge aggravated battery on McNabb but that the amended charging document failed to properly list the offense as a first degree felony.  (Dkt. 10, Ex. 8, pp. 86-87.)  Upon inquiry from the sentencing court, defense counsel stated:

> In fact, I think I might have even reviewed it the night before I think that the trial started, [the prosecutor] advised that that may be coming and I looked at it. . . . I mean, if it's just a [scrivener's error] with regard to the degree, but the body - - he was put on adequate notice as to what he was accused of doing.

(*Id.*, pp. 87-88.)

judgment added § 784.07, Fla. Stat., which governs assault or battery on law enforcement officers.  (Dkt. 10, Ex. 10.)  Smith alleged a federal constitutional violation when he raised this claim in his postconviction motion.  (Dkt. 10, Ex. 15, p. 36.)  The state court rejected Smith's claim:

> In Claim Five (5), Defendant claims that his sentence is illegal because the Court issued an Amended Judgment Form on October 21, 2009. Defendant is incorrect.  The Amended Judgment Form only corrects a scrivener's error as to the statute under which Defendant was convicted. This does not render a sentence illegal.  Claim Five (5) is **DENIED**.

(Dkt 10, Ex. 16) (court's reference to attachments omitted).

Smith does not establish that the state court's determination was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based on an unreasonable determination of the facts.  Ground Five warrants no relief.

**Ground Six**

Smith asserts that his right to effective assistance of counsel and his federal right to due process were violated because the judgment erroneously reflects that he entered a guilty plea.  In ground seven of his postconviction motion, Smith stated that the judgment incorrectly showed he entered a guilty plea.  However, he did not allege any constitutional deprivation as a result of this error.  (Dkt. 10, Ex. 15, p. 41.)  Instead, Smith merely alerted the court to the inaccuracy and requested that the record be corrected.  (*Id.*)[8]  Therefore, his federal claim is unexhausted. Smith cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h).  Any federal violation

---

[8] The state court granted this claim and ordered the Clerk to amend the judgment.  (Dkt. 10, Ex. 16.)

he now raises is therefore procedurally defaulted.  *See Smith*, 256 F.3d at 1138. Smith does not show that an exception applies to overcome the procedural default. Notwithstanding the default, Smith fails to show any constitutional violation as a result of this scrivener's error on the judgment.  He does not demonstrate entitlement to relief on Ground Six.

Any claims not expressly addressed herein have been determined to be without merit.

It is therefore

**ORDERED** that Smith's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.[9]  The Clerk is directed to enter judgment against Smith and to close this case.

It is further **ORDERED** that Smith is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id*.  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. at § 2253(c)(2).  To make such a showing, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v.*

---

[9] To the extent Smith may seek an evidentiary hearing, such a hearing is not warranted.  *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record."); *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1232 (11th Cir. 2014) ("Henry is not entitled to an evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.").

*Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Smith has not made this showing.  Finally, because Smith is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

 **ORDERED** in Tampa, Florida, on February 27, 2017.

Charlene Edwards Honeywell
United States District Judge

Copy to:
Gene Smith
Counsel of Record